IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN DUANE BURNS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-cv-314-DES |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kevin Duane Burns ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

I.   **Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

---

[1] Effective December 20, 2023, Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d).  No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920(a)(4). This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) whether the claimant can perform his past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Although the claimant bears the burden of proof through step four, the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084. If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.     Claimant's Background and Procedural History

In February 2020, Claimant applied for supplemental security income benefits under Title XVI of the Act. (R. 17, 403-33). Claimant alleges he has been unable to work since November 16, 2019, due to posttraumatic stress disorder ("PTSD"), bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder, depression, anxiety, and paranoia. (R. 427, 465). Claimant was 33 years old on the date of the ALJ's decision. (R. 32, 403). He has a tenth-grade education and past work as a pipeline laborer. (R. 47, 60, 466).

Claimant's claim for benefits was denied initially and on reconsideration. (R. 135-59). ALJ Michael Mannes conducted an administrative hearing and issued a decision on June 14, 2022, finding Claimant not disabled. (R. 89-128, 160-75). The Appeals Council remanded the case on November 16, 2022. (R. 183-89). On remand, ALJs Michael Mannes and Doug Gabbard, II each conducted a supplemental hearing, and on April 26, 2023, ALJ Doug Gabbard, II issued a decision finding Claimant not disabled. (R. 17-32, 41-68, 70-87). The Appeals Council denied review on July 31, 2023 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 416.1481. Claimant filed this appeal on September 13, 2023. (Docket No. 2).

## III.    The ALJ's Decision

The ALJ found at step one that Claimant had not engaged in substantial gainful activity since his application date of February 6, 2020. (R. 19). At step two, the ALJ found Claimant had the severe impairments of major depressive disorder, generalized anxiety disorder, social anxiety disorder, antisocial personality disorder, reading disorder, PTSD, chronic lower back pain, and

right shoulder pain of unknown etiology. (R. 20). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 20-25).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b) with the following non-exertional limitations:

> . . . occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and occasional overhead reaching with his right dominant arm. He is also limited to simple, repetitive, and routine work. His supervision must be tactful, supportive, and non-confrontational. He is capable of occasional contact with supervisors and coworkers, but he will do best in a well-spaced work setting with his own work area or where he can frequently work alone. He cannot perform fast-paced work, *i.e.*, work requiring a specific production rate, such as assembly-line work or work requiring hourly quotas. He will need regular work breaks every two hours, as normally allowed in competitive work. He should only have occasional, well-explained work changes. He must avoid all loud, noisy work environments. He should have no contact with the general public.

(R. 25). The ALJ provided a summary of the evidence that went into this finding. (R. 25-30).

At step four, the ALJ concluded that Claimant could not return to his past relevant work. (R. 31). Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other work existing in significant numbers in the national economy, including merchandise marker, routing clerk, and housekeeper cleaner. (R. 31). Accordingly, the ALJ concluded Claimant was not disabled. (R. 32).

**IV.   Issues Presented**

Claimant asserts the ALJ erred by: (1) failing to account for an opinion of the consultative examiner which conflicts with the RFC, and (2) assessing an RFC that is vague and confusing.[2]

---

[2] In his opening brief, Plaintiff also asserted that the ALJ included the term "frequently" in the RFC but omitted such term from the hypothetical question posed to the VE. (Docket No. 12 at 16-17). However, in his reply brief, Plaintiff conceded that the ALJ did not omit the term "frequently" from the hypothetical question. (Docket No. 15 at 10).

V.   **Analysis**

A.   **ALJ Properly Evaluated and Accounted for Dr. Cooper's Opinion**

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. A "medical opinion" is a statement from a medical source about what a claimant "can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" in four work-related abilities. 20 C.F.R. § 416.913(a)(2). These abilities include the "ability to perform mental demands of work activities such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[.]" 20 C.F.R. § 416.913(a)(2)(i). If the record contains a medical opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . ." 20 C.F.R. § 416.920c(a). Instead, the ALJ evaluates the "persuasiveness" of medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict the opinion or finding. 20 C.F.R. § 416.920c(a), (c).  Supportability and consistency are the most important factors, and the ALJ must always explain how he considered those factors in the decision.[3] 20 C.F.R. § 416.920c(b)(2). The ALJ is not required to articulate findings on the remaining factors unless there are two or more medical opinions about the same

---

[3] Supportability refers to the relevancy of "the objective medical evidence and supporting explanations presented by a medical source" to support his or her medical opinion. 20 C.F.R. § 416.920c(c)(1). Consistency refers to the consistency of a medical source opinion "with the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 416.920c(c)(2).

issue that are equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 416.920c(b)(2), (3).

Dr. Cooper conducted a consultative mental status examination of Claimant on April 14, 2022. (R. 676-80). Dr. Cooper observed that Claimant appeared anxious at the outset of the examination but became more comfortable as it progressed and that Claimant appeared slightly preoccupied, inattentive, or bored at times. (R. 678). In a section of his report labeled "Summary and Conclusions," Dr. Cooper opined that Claimant would "likely have difficulty relating to others in a work setting, particularly if he had to work in close contact with others[,]" but nonetheless was "likely capable of working in settings in which he has little contact with others." (R. 680). Dr. Cooper also indicated Claimant's ability to tolerate normal stress appeared limited and that he had limited insight. *Id.* Additionally, Dr. Cooper indicated Claimant appeared "able to understand simple questions and follow simple directions, though more complex directions would likely be difficult." *Id*.

In addition to the thorough narrative report described above, Dr. Cooper completed a form titled "Medical Source Statement of Ability to do Work-Related Activities (Mental)). (R. 681-83). The form asked for an opinion on the degree of Claimant's limitation for various functional areas – either none, mild, moderate, marked, or extreme.[4] Therein, Dr. Cooper indicated Claimant was markedly limited in his abilities to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to usual work situations and to changes in a routing work setting. (R. 682). In support, Dr. Cooper noted that Claimant's "social anxiety and PTSD

---

[4] The form defined "none" as "able to function in this area independently, appropriately, effectively, and on a sustained basis. (R. 681). Mild was defined as "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." *Id.* Moderate was defined as "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." *Id.* Marked was defined as "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* Extreme was defined as "unable to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.*

symptoms suggest that he would have significant difficulty relating well to others in a work setting." *Id.* Dr. Cooper also indicated Claimant was moderately limited in his ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions. (R. 681). Lastly, Dr. Cooper indicated Claimant was mildly limited in his ability to understand, remember, and carry out simple instructions and to make judgments on simple work-related decisions. *Id.* In support of these findings, Dr. Cooper stated Claimant's performance on "tests for memory, attention, and concentration was quite variable, suggesting the effects of sporadic deficits in attention and concentration due to ADHD." (R. 681).

In discussing the medical source opinion evidence, the ALJ concluded Dr. Cooper's opinion was partially persuasive. (R. 29). As relevant to this appeal, the ALJ found Dr. Cooper's opinion regarding Claimant's ability to interact with others was supported by: (1) Dr. Cooper's own statement that Claimant's social anxiety and PTSD symptoms suggest that Claimant would have significant difficulty relating well to others in a work, (2) statements Claimant made to Dr. Cooper, (3) and Dr. Cooper's observations of Claimant. (R. 29). The ALJ then found Dr. Cooper's opinion regarding Claimant's ability to interact with others was consistent with other evidence of record he summarized elsewhere in the opinion. (R. 29).

As part of the RFC assessment, the ALJ explained "[c]onsistent with Dr. Cooper's opinion, . . . claimant should have no contact with the general public. His supervision must be tactful, supportive, and non-confrontational. He should have only occasional contact with supervisors and coworkers, and he will do best in a well-spaced work setting with his own work area or where he can frequently work alone." (R. 30). As set forth above, the ALJ ultimately imposed an RFC that permitted "occasional contact with supervisors and co-workers," and found that "he will do best

in a well-spaced work setting with his own work area or where he can frequently work alone." (R. 25).

Claimant asserts the ALJ erred by failing to include sufficient limitations in the RFC to account for Dr. Cooper's finding that he was markedly limited in his ability to interact appropriately with supervisors and co-workers. (Docket No. 12 at 2-12). Claimant's argument ignores that Dr. Cooper himself translated this finding into work-related limitations, which the ALJ adopted. As Claimant correctly points out, Dr. Cooper found Claimant markedly limited in his ability to interact appropriately with supervisors and co-workers on the medical source statement form he completed. However, Dr. Cooper translated this finding into a work-related limitation in the "Summary and Conclusions" section of his report by stating Claimant "would likely have difficulty relating to others in a work setting, particularly if he had to work in close contact with others. On the other hand, he is likely capable of working in settings in which he has little contact with others." (R. 680). As set forth above, the ALJ similarly assessed Claimant's limitations by concluding Claimant could (1) have "only occasional contact with supervisors and co-workers[,]" and (2) would do best in a "well-spaced work setting with his own work area or where he can frequently work alone." (R. 25). Claimant suggests that because the ALJ accounted for Dr. Cooper's opinion that Claimant was markedly limited in his ability to interact appropriately with the public by precluding all contact with the general public, that the ALJ was likewise required to limit Claimant to no contact with supervisors and co-workers. However, in *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012), the court found that is not error for an ALJ to "temper" a medical opinion "in the claimant's favor" by assigning a more restrictive RFC than the opinion suggests. Thus, limiting Claimant to no contact with the general public did not bind the

ALJ to likewise limiting Claimant to no contact with supervisors and co-workers, particularly since Dr. Cooper himself did not so limit Claimant.

In *Smith v. Colvin,* 821 F.3d 1264, (10th Cir. 2016), a consultative psychologist completed a form similar to the form Dr. Cooper completed. The psychologist in *Smith* rated the claimant's abilities in particular functional areas and found her "moderately limited" in several areas. *Id.* at 1268. On appeal, the claimant questioned how the RFC incorporated all the moderate limitations the psychologist identified. *Id.* at 1269, n.2. The court found "[t]his is the wrong question." *Id.* Because the initial functional limitation ratings serve "only as an aid to [the consultative examiner's] assessment of residual functional capacity," a reviewing court should compare the ALJ's findings to the consultative examiner's "opinion on residual capacity, not [his] notations of moderate limitations." *Id.* Thus, the question is whether the ALJ sufficiently addressed the consultative examiner's narrative RFC limitations in the RFC assessment. *See, e.g., Lee v. Colvin,* 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished) (holding where the ALJ's RFC assessment "included, essentially verbatim, the limitations from Section III of the MRFCA," the ALJ "was not also required to specifically adopt or discuss each individual limitation described in Section I.").

In this case, Dr. Cooper rated Claimant's degree of limitation in several functional areas, and found he was "markedly" limited in his ability to interact appropriately with supervisors and co-workers. But, as in *Smith* and *Lee*, Dr. Cooper's narrative discussion, not the specifically rated limitations serve as Claimant's mental RFC. Claimant fails to show how Dr. Cooper's limitations on Claimant's contact with supervisors and co-workers is inconsistent with the RFC determination. Because the ALJ incorporated Dr. Cooper's work-related limitations into the RFC, the ALJ committed no error.

B.  **ALJ's RFC was Supported by Substantial Evidence**

As part of the RFC determination, the ALJ included the limitation that Claimant "will do best in a well-spaced work setting with his own work area or where he can frequently work alone." (R. 25). Claimant contends this limitation is excessively vague and confusing.

Claimant's assertions are unpersuasive. Plaintiff points to no evidence suggesting the VE misunderstood this limitation. To the contrary, the VE did not ask for any further clarification of this limitation, and Claimant's counsel did not object to this limitation as vague or difficult to understand at the administrative hearing. (R. 60-61). The Court thus concludes the ALJ appropriately relied on the VE's testimony. *See Ellison v. Sullivan,* 929 F.2d 534, 537 (10th Cir. 1990) (finding the VE's testimony that there were jobs claimant could perform within the RFC was substantial evidence the ALJ could rely upon in concluding claimant was not disabled); *Tyrone L.S., v. Kijakazi,* No. 22-CV-00249-SH, 2023 WL 5392724, at*6 (N.D. Okla. Aug. 22, 2023) (rejecting argument that VE did not understand RFC term "some," where there was no evidence that VE misunderstood its meaning and term was "commonplace term with everyday meaning that did not require further elaboration or clarification.").

Moreover, Claimant ignores the fact that the jobs the VE identified and the ALJ adopted have low "people" ratings according to the Dictionary of Occupational Titles ("DOT"). All three of the identified and adopted jobs have a "people" rating of 8. DOT § 209.587-034 (merchandise marker); DOT § 222.687-022 (routing clerk); DOT 323.687-014 (housekeeper cleaner). The "people" rating is graded on a scale of 0-8, with 8 being the "lowest possible level of human interaction that exists in the labor force." *Lane v. Colvin,* 643 F. App'x 766, 770 n.1 (10th Cir. 2016) (unpublished). Thus, the Court finds that none of the jobs identified and adopted at step five must be eliminated based on their social interaction requirements.

**VI.    Conclusion**

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this 26th day of September, 2024.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE